IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LEONARD AUGUSTA FOX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:13-cv-02759-STA-egb |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER DENYING § 2255 MOTION,
DENYING MISCELLANEOUS MOTIONS,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Leonard Augusta Fox has filed a motion under 28 U.S.C. § 2255 asking the Court to set aside or vacate his sentence ("petition"). (ECF No. 1.) Fox claims that his attorney provided ineffective assistance in connection with his guilty plea to one count of sex trafficking a minor. For the reasons set forth below, the petition is DENIED.[1]

I.  **Background**

   A.  **Criminal Charges and Plea**

On September 4, 2008, a federal grand jury returned an indictment against Fox charging him with three counts of sex trafficking of children by force, fraud, or coercion in violation of 18

---

[1] All other pending motions are also denied. Fox's motions (ECF Nos. 19 and 23) to reconsider the Court's order allowing attorney Brooks to withdraw as his habeas counsel and denying Fox's request for the appointment of new counsel (ECF No. 16) are DENIED. The motion seeking time to secure counsel (ECF No. 24) is DENIED as moot because Fox had more than a year since the filing of the motion to find new counsel. The motion to stay the proceedings (ECF No. 25) to allow Fox to amend the petition to add a claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015), is DENIED as moot; the Court has already ruled on the *Johnson* claim. (*See* ECF No. 32.) Fox's "Motion to Address the Merits" of the petition (ECF No. 14) is DENIED as moot in light of the Court's denial of his habeas claims.

1

U.S.C. §§ 1591 (a)(1), (a)(2), and (b)(1). (*United States v. Fox*, 08-CR-20307-01 (hereinafter "Cr. Case"), ECF No. 17.) The factual bases for the charges, as stated in the presentence report ("PSR"), are Fox's alleged recruitment of underage girls for prostitution and use of coercion and force against them.

According to the PSR, in September of 2008, Memphis police officers were flagged down by an individual who stated that Fox was inside an apartment complex with two juvenile girls. The officers went to the location and encountered Fox, whose pants were unzipped with his penis in plain view. (PSR at 4.) The investigative file describes what the officers saw next:

> Two juvenile girls, [Jane Doe 1], age 14 and [Jane Doe 2], age 15, who were half-clothed, were found hiding under a bed. The officers observed a large box of condoms and a journal, which belonged to [Jane Doe 1], inside the bedroom. There were also several used condom wrappings on a mattress on the living room floor. Both victims admitted that they had recently had sexual intercourse with Fox. Fox was arrested and the two juvenile girls were taken into state protective custody.

(*Id.*)

Further investigation revealed that when Jane Doe 1 was thirteen years old, Fox recruited her to work as a prostitute. Fox "showed [Jane Doe 1] money and gained her trust," eventually convincing her to run away with him. Shortly thereafter, Fox convinced the girl "to have sex with two of his friends," for which Fox was paid money. Fox "taught [Jane Doe 1] how to be a prostitute" and took her to apartment complexes to have sexual encounters with male residents. Jane Doe 1 indicated to investigators that Fox occasionally gave her marijuana and was "extremely violent" at times. On one occasion, Fox "bound her hands and feet, and left her in the attic for an extended period of time." Fox also physically assaulted Jane Doe 1 on numerous other occasions. (*Id.*) Jane Doe 1 kept a journal of her experiences. (*Id.* at 4-5.)

Another juvenile, Jane Doe 2, told investigators that she came to work for Fox in June of 2008 when she was fifteen years old. Like Jane Doe 1, Jane Doe 2 was taken by Fox to apartment complexes, where Fox allowed men to choose which girls they wanted to have sex with. Fox would collect money from the customers, keeping a tally of what amount of money the girls were earning by counting the number of condoms the girls used. Fox also "encouraged [Jane Doe 1 and Jane Doe 2] to engage in three way sexual encounters with him, which happened frequently."

Jane Doe 1 subsequently introduced fifteen-year-old Jane Doe 3 to Fox. Fox engaged in the same pattern of conduct with Jane Doe 3, taking her to apartment complexes and prostituting her to male residents. Fox told Jane Doe 3 that she "had to have sex with men or else." (*Id.* at 5.)

Fox never gave the three girls any of the money he made from prostitution and he "only allow[d] them to interact with certain people." (*Id.* at 5, 6.) Fox "did not have a permanent residence and [he] moved the girls frequently from place to place." (*Id.* at 5.)

On February 23, 2009, Fox appeared with his attorney, Michael Robbins, and pled guilty to Count 2 of the indictment pursuant to a negotiated plea. (Hrg. Tr., Cr. Case, ECF No. 77.) The plea agreement specified that:

- the "indictment charge[d] a crime which [carried] a sentence of imprisonment [of] not less than 10 year or more than life";
- the government would not seek a sentence enhancement based on 18 U.S.C. § 1591(b)(1), which carries a mandatory minimum sentence of fifteen years;
- the government would dismiss the remaining two charges at the appropriate time;
- the government would not oppose the Court's giving Fox credits for accepting responsibility;
- the government would recommend a prison term of 120 months;
- the government's sentencing recommendation was not binding on the Court;
- if the Court did not accept the recommended sentence, Fox had no right to withdraw his guilty plea; and

- Fox was waiving his rights to both appeal and collaterally challenge his conviction and sentence, with the exception of claims of prosecutorial misconduct and ineffective assistance of counsel.

(Cr. Case, ECF No. 34.)

At the change-of-plea hearing, Fox answered in the affirmative to questions asking if he had conferred with his attorney about the terms of the plea agreement, had agreed to the terms voluntarily, understood the terms, and understood that his potential sentence was not less than ten years and not more than life imprisonment. Fox also confirmed that he understood that the Court was not bound by the government's recommendation of a 120-month sentence. (Hrg. Tr., Cr. Case, ECF No. 77 at 8-15.)

### B. Motion to Withdraw the Plea, Sentencing, and Appeal

Robbins subsequently withdrew as Fox's counsel. On February 22, 2010, Fox filed a *pro se* motion to withdraw his plea. (Cr. Case, ECF No. 71.) Fox alleged that attorney Robbins did not explain the terms of the plea agreement to him and coerced him into pleading guilty. Fox retained attorney Javier Bailey to represent him at the evidentiary hearing on the motion. Attorney Robbins testified at the hearing about the circumstances surrounding the plea negotiations. The Court denied Fox's motion to withdraw his guilty plea, finding that Fox had voluntarily pled guilty to Count 2 of the indictment. (Cr. Case, ECF No. 82.)

The Court sentenced Fox to 300 months of imprisonment followed by ten years of supervised release. Fox's sentence reflected, in part, a two-level reduction for acceptance of responsibility. (*See* Hrg. Tr., Cr. Case, ECF No. 115 at 14, 45.)

The Sixth Circuit affirmed the judgment of conviction and sentence, (*Fox v. United States*, No. 10-5793 (6th Cir. Oct. 18, 2011)), and the Supreme Court denied certiorari. *Fox v. United States*, 133 S. Ct. 295 (Mem.) (Oct. 1, 2012).

C. **The 2255 Petition**

On September 30, 2013, Fox, through counsel, filed his § 2255 petition. (ECF No. 1.) In compliance with Rule 2(b)(5), Fox later filed a declaration (ECF No. 4-1) swearing that the allegations in the petition are true and accurate. *See* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2(b)(5). Fox alleges that his attorney, Michael Robbins, rendered ineffective assistance at the plea stage by (1) giving Fox incorrect information about the low-end of the sentencing guideline range and (2) failing to inform Fox that there was "serious doubt" about whether the Court would accept the government's recommendation of 120 months. (ECF No. 1 at 5-7.)[2] Fox also alleges that, but for the erroneous advice, he would have proceeded to trial. (*Id.* at 6, 7.) Fox requests that his "guilty plea [be] set aside" and that he be allowed "to proceed to trial." (*Id.* at 6.)

The government opposes the petition, arguing that the performance of Fox's plea counsel was not constitutionally deficient nor was Fox prejudiced by it. (ECF No. 21.) The government did not submit an affidavit by attorney Robbins because its several attempts to reach him were unsuccessful. (ECF No. 22.) The government argues, however, that no such affidavit is needed because Robbins' testimony at the hearing on Fox's motion to withdraw his plea is sufficient to

---

[2] On April 21, 2016, Fox filed a *pro se* motion for leave to amend his petition to add a claim for relief under the Supreme Court's decision in *Johnson*, 135 S. Ct. 2551. The Court denied the motion, holding that Fox is not entitled to any relief pursuant to *Johnson*. (ECF No. 32.)

In his reply brief, Fox makes numerous additional allegations regarding the performances of attorneys Robbins and Bailey. He also complains that his habeas counsel, attorney Robert Brooks, denied him effective assistance when he withdrew his representation upon being hired as an Assistant Federal Public Defender. The Court will not consider the additional allegations because Fox has not sought leave to file an amended petition to add them. Fox knows the proper procedure for doing so, and even the applicable Federal Rule, as evidenced by his earlier *pro se* motion for leave to amend the petition to add a claim under *Johnson*. (*See* Motion for Leave to Amend, ECF No. 26) (requesting leave under FED. R. CIV. P. 15(a) to file an amended petition).

show that Robbins' performance was not deficient. Although Fox argues that Robbins' testimony was not truthful in all respects, he relies on certain portions of Robbins' testimony as credible support for his allegations.

Because Fox does not show that he was prejudiced by Robbins' conduct, the Court accepts the petition's description of what Robbins knew and what he told Fox, supplemented by those portions of Robbins' testimony on which Fox relies.

### 1. Advice Regarding Sentencing Guidelines

The petition alleges that Robbins "misled [Fox] in making his decision whether to plead guilty or not by predicting a minimum guidelines sentence about 10 years too low." (ECF No. 1 at 7.) Robbins "calculated [Fox's] sentencing guidelines to begin at 260 months and so advised" Fox, despite the fact that the actual low-end of the range was 360 months. (*Id.* at 6-7.) As "proof and support that Mr. Robbins admit[ed] that we never talked about 360 to life," (ECF No. 30 at 4-5), Fox offers the following testimony given by attorney Robbins at the hearing on Fox's motion to withdraw his plea:

> A. We never talked about the 360 months. Let me be clear as to why we didn't. As I said before, I did my preliminary estimate projection of what I thought the guidelines were. As you probably know, the probation department in this case did that grouping thing under the guidelines, and I will confess readily, I don't do well reading the grouping rules and how you do that and calculate the numbers. I make my best effort, and I did not foresee the five points I think that was added in this case, what brought it to 360 to life, in other words. But the number was 266 I think under my calculations.
>
> Q. Top of the guidelines?
>
> A. No, low end.
>
> Q. Low end, okay.
>
> A. And I know it was around 260 something. And I concluded from that it really didn't matter after that because 266 would be horribly burdensome. I was focused on this ten-year recommendation and making our best effort to get the judge to

follow that. So we didn't talk about 360 to life because that final calculation in the report was not prepared at that point.

(ECF No. 30-3) (Hrg. Tr., Cr. Case, ECF No. 115-5 at 96.)

Fox further points to Robbins' testimony regarding his limited proficiency with the sentencing guidelines "Big Book." (ECF No. 30 at 8.) Robbins testified as follows:

> Q. And did you have discussions with [Fox] before the plea about the potential effect of the guidelines?
>
> A. Yes, we did discuss the sentence guidelines, generally how the system works and operates. And I explained to him that I had access to certain parts of his history, and I was calculating a rough estimate. But I did tell him, we really wait until we get the probation report because those people—most lawyers I think will admit this—they are into that big book, you know, on a daily basis, and their calculations frequently help me understand how to calculate and understand the guidelines. So I never represented to him that my estimate was the guideline range. However, if I'm recalling right, my estimate had the lowest possible low end of the guidelines at 188, and the lowest on the other circumstances of the calculation was like 260 something, from which I concluded and told Mr. Fox whatever your guideline sentence is is way more than ten years on the low end. And that again moved me to try to persuade him to look at this as a statutory sentence because if it were a guideline sentence, then it was going to be extremely burdensome and lengthy, absolutely it was.

(*Id.*; Hrg. Tr., Cr. Case, ECF No. 115-5 at 87-88.)

### 2. Advice Regarding the Government's Sentencing Recommendation

Fox alleges that Robbins knew that there was "serious doubt" about whether the Court would accept the government's sentencing recommendation of 120 months but nevertheless informed Fox that there was a reasonable possibility that the Court would accept the recommendation. (ECF No. 1 at 5-6; ECF No. 30 at 4-5.) He quotes an exchange between the Court and Assistant United States Attorney ("AUSA") Parker at the hearing on Fox's motion to withdraw his plea:

> THE COURT:  . . . I'm going to go on and advise counsel at this point that it's my intention, unless you can persuade me otherwise, to reject the plea agreement. So you need to know that up front because I am not at all convinced that the plea that has been negotiated in this case thus far is satisfactory under the

circumstances as I understand them based on the guideline recommendations and based upon what the plea is, the recommendation that's contain in the plea agreement.

MR. PARKER: Your honor, could I address one thing about that? Could we address—just so the court is aware, the recommendation from the government was specifically stated, and Mr. Robbins, that this was a nonbinding recommendation on the court.

THE COURT: But I think it's under 11C1, isn't it, Mr. Parker?

MR. PARKER: No, Your Honor. In fact, the paragraph specifically says if the court does not accept—

THE COURT: Hold on a minute. Go ahead.

MR. PARKER: The paragraph specifically says—I made a point to put it in there, had discussions with Mr. Robbins—we will make the recommendation to avoid the victims having to testify, but the plea agreement specifically is going to say if the court does not accept the recommendation, the defendant cannot withdraw the plea agreement or withdraw the plea, so it is a nonbinding recommendation.

THE COURT: And I read somewhere, I thought, that is was an 11(1)(c)(1) recommendation, but—

MR. PARKER: No, specifically I refused to do one at Mr. Robbins' request, told him that is the best the government could do, in fact specifically told Mr. Robbins that, look, we will make this recommendation [of 120 months], but we all know where the guidelines are, and there is serious doubt whether the judge would ever follow the recommendation.

(ECF No. 1 at 5) (Hrg. Tr., Cr. Case, ECF No. 115-4 at 15-17.)

Fox also cites to testimony he says demonstrates that the 120-month recommendation was "not . . . a realistic possibility" (ECF No. 30 at 4):

ROBBINS: But I was confident of one thing, and this is 14 months or so ago, February of '09, I was confident, relatively confident that it [the sentence] wouldn't be as much as the lowest end of the possible guidelines calculations. I was relatively confident of that at the time. And that was the way I described it to him.

\* \* \*

Q. All right. Now you were saying earlier that your understanding was as of 14 months ago you thought the government's ten-year recommendation was viable?

8

A. Well, if I may, I thought there was a reasonable—I had a reasonable confidence that the court would follow that recommendation, I did.

Q. Has something changed that?

A. I don't believe that today based upon what I know of the events of the past 14 months or so.

(ECF No. 30-1) (Hrg. Tr., Cr. Case, ECF No. 115-5 at 76, 84.)

In further support of his allegation that Robbins knew or should have known that the Court was unlikely to accept the 120-month recommendation, Fox points to Robbins' assessment of the strength of the prosecution's case and Fox's lack of a viable defense:

> ROBBINS: …. The facts were horrible. The circumstances were absent any kind of mitigation or any ability to explain. There was absolutely no theory under which any viable theme of a defense of the case could be fashioned.

(ECF No. 30-2) (Hrg. Tr., Cr. Case, ECF No. 115-5 at 90.)

## II. Analysis

A prisoner seeking to vacate his sentence under § 2255 "must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). Ineffective assistance of counsel is an "error of constitutional magnitude." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prevail on a claim of attorney ineffective assistance, a petitioner must demonstrate that (1) his attorney's performance was deficient, that is, "fell below an objective standard of reasonableness," and (2) his attorney's error prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). The attorney's performance is presumptively reasonable and the petitioner bears the burden of overcoming the presumption. *Id.* at 689. To show prejudice under *Strickland*, the petitioner must demonstrate that there is a reasonable probability that but for his

attorney's unprofessional errors the results of the proceeding would have been different. *Id.* at 694. This two prong test applies to ineffective assistance of counsel claims in the plea context. *Hill v. Lockhart,* 474 U.S. 52, 57–58 (1985).

    A.      Evidentiary Hearing

Although Fox did not file a motion for an evidentiary hearing on his claims, he argues in his Reply that he is entitled to one. (Reply, ECF No. 30 at 2.) A petitioner is not entitled to an evidentiary hearing on his claims if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." 28 U.S.C. § 2255(b). *See also Blanton v. United States,* 94 F.3d 227, 235 (6th Cir.1996) ("evidentiary hearings are not required when ... the record conclusively shows that the petitioner is entitled to no relief.").

Here, there is no factual dispute requiring an evidentiary hearing. Even assuming that counsel's performance was deficient, a hearing on prejudice is unnecessary because Fox submitted only a bare allegation that he would have proceeded to trial but for his counsel's advice and the record shows that Fox acknowledged the voluntariness of his plea and his actual sentencing exposure in his plea agreement and during his plea colloquy. Fox is therefore not entitled to an evidentiary hearing.[3]

---

[3] Fox has submitted the affidavits of his sister, Vickie Fox Price, and his niece, Kissy Killion, in support of his argument that Robbins' advice constituted deficient performance. Fox Price avers that at the time of the hearing on Fox's motion to withdraw his plea, attorney Robbins sat down next to her in the hallway outside the courtroom. She states that she asked Robbins, whom she did not know, what he was doing at the courthouse. Robbins replied "I mis-informed a former client of mine on what he agreed to plead guilty to, and was here to try and get it corrected along with other reasons." (ECF Nos. 30-11, 30-12.) Fox Price later sat down in the courtroom, where she heard Robbins testify. She avers that when she realized that "[w]hat Mr. Robbins said during the hearing while on oath wasn't what he said while talking to me outside the courtroom," she had Bailey's secretary, Kissy Killion, text Bailey to tell him. Bailey never followed-up with Fox Price. Kissy Killion confirms Bailey's decision not to put Fox Price on the stand. (ECF Nos. 30-13, 13-14.)

    The affidavits do not create a factual dispute warranting an evidentiary hearing. Although Fox Price's affidavit, corroborated in part by Killion's affidavit, suggests that some of

B.  Deficient Performance and Prejudice

An attorney's alleged inaccurate sentencing prediction, standing alone, is not ineffective assistance of counsel. *United States v. Awad*, 980 F.2d 731, 1992 WL 354084, *1 (6th Cir. Nov. 30, 1992) (table). "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *McMann v. Richardson,* 397 U.S. 759, 771 (1970).

Here, Robbins' advice regarding the sentencing guideline range and the Court's likely acceptance of the government's recommendation appear to be mere sentencing predictions. The petition itself calls the sentencing guideline advice a prediction. (*See* ECF No. 1 at 7) (Counsel "misled the defendant in making his decision whether to plead guilty or not by predicting a minimum guideline sentence about 10 years too low.") Testimony referenced by Fox supports that characterization. (*See* Hrg. Tr., Cr. Case, ECF No. 115-5 at 87-88.) (Robbins: "Yes, we did discuss the sentence guidelines, generally how the system works and operates. And I explained to him that I had access to certain parts of his history, and I was calculating a rough estimate."). Likewise, Fox's complaint that Robbins failed to advise him that there was "serious doubt" about whether the Court would accept the government's recommendation is a challenge to Robbins' failure to get the sentencing *probabilities* right.[4]

---

Robbins' testimony was untruthful (she does not identify the alleged untruthful statements specifically), it should not be read as calling into question the credibility of those portions of Robbins' testimony on which Fox himself relies. In addition, the affidavits are relevant only to the deficient-performance prong, while Fox's claims are subject to dismissal on the prejudice prong, as to which there is no factual dispute.

[4] Moreover, AUSA Parker's comment to Robbins that there was "serious doubt" was itself a vague prediction, not a statement of fact. Robbins was entitled to weigh Parker's prediction against the government's sincere justification for recommending a 120-month sentence and proceeding with the plea deal: to avoid having to call the juvenile witnesses to testify at trial. *See Fox*, No. 10-5793 at 3-4 (rejecting Fox's argument on appeal that the 120-month recommendation was not "sincere," noting that "[t]he government justified its

Nevertheless, even if it cannot be said that Robbins offered Fox mere sentencing predictions based on his good faith evaluations of the law and facts, Fox cannot prevail on his claims because he has not shown that Robbins' conduct prejudiced him. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") To establish prejudice in the plea context, a petitioner must show that if his counsel had not given him erroneous advice, there was a "reasonable probability" that he would not have pleaded guilty but instead would have proceeded to trial. *Hill*, 474 U.S. at 59; *Pilla v. United States*, 668 F.3d 368, 372-73 (6th Cir. 2012). The "reasonable probability" test is objective, not subjective; the petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Haddad v. United States*, 486 F. App'x 517, 521 (6th Cir. 2012).

Here, Fox's mere allegation that he would have proceeded to trial but for his attorney's conduct is not enough to meet the objective prejudice test. *See id.* at 522 ("The only counterweight [Petitioner] points to in support of his claim that he would have insisted on going to trial is the after-the-fact allegation in his affidavit; in other words, all [Petitioner] offers to support his claim is the claim itself. . . . [T]hat claim [is] insufficient to show prejudice because the test is objective . . . ."); *Pilla*, 668 F.3d at 373 ("Pilla cannot make [the prejudice] showing merely by telling us now that she would have gone to trial then if she had gotten different advice. The test is objective, not subjective . . . .").

Fox's allegation, moreover, is contradicted by the record. *See Haddad*, 486 F. App'x at 522 (petitioner did not show prejudice where "the entire record [went] against" his allegation that

---

recommendation by explaining the emotional toll that a jury trial would have had on the minor victims".)

he would have insisted on going to trial). Fox signed the plea agreement, acknowledging that his minimum and maximum exposure was ten years to life in prison and that the government's recommendation of 120 months was not binding on the Court. Fox also acknowledged his understanding of these facts at the change-of-plea hearing, stating that he nevertheless wished to waive his right to trial and plead guilty. *See Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) ("[T]he trial court remedied any misconception by informing [Petitioner] of the potential maximum and minimum terms of imprisonment."); *Awad*, 1992 WL 354084, at *1 (petitioner was not prejudiced by counsel's inaccurate guidelines prediction because he was informed of the maximum sentence he faced); *United States v. Bridget*, 923 F.2d 849, 119 WL 4270, at *1, 2 (4th Cir. Jan. 22, 1991) (table) (where "all parties had anticipated a guideline range of 151-188 months," but actual guideline range was 210-262 months, defendant's guilty plea was voluntary because the court informed defendant of the maximum and minimum sentence he faced) *citing United States v. Stephens,* 906 F.2d 251, 253 (6th Cir.1990) (counsel's inaccurate estimate of the guideline sentence did not constitute a fair and just reason to withdraw the guilty plea). Fox's sworn testimony at the change-of-plea hearing is presumed to be truthful and therefore constitutes a "formidable barrier" to collateral attack. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record undermines Fox's allegation of prejudice in another important respect. Relying on Robbins' testimony, Fox admits to the strength of the prosecution's case and the weakness of his defense. As noted, Robbins testified that the facts of the case were "horrible" and "[t]here was absolutely no theory under which any viable theme of a defense . . . could be fashioned." (ECF No. 30-2) (Hrg. Tr., Cr. Case, ECF No. 115-5 at 90.) The overwhelming evidence of Fox's guilt, and the absence of a viable defense, suggest that Fox's rejection of the plea bargain would have been irrational as the likely outcome of a trial would have been

13

conviction on the three sex trafficking charges and a longer term of imprisonment. By pleading guilty, Fox reaped significant benefits: the government dropped the two remaining counts of sex trafficking of children and did not advocate a guideline sentence or appeal the sentence imposed, and Fox received a two-level reduction for his acceptance of responsibility and a sentence sixty months below the low end of the guidelines. *See Pilla*, 668 F.3d at 373 (petitioner did not show prejudice where she "faced overwhelming evidence of her guilt[,] . . . had no rational defense, would have been convicted[,] and would have faced a longer term of incarceration.") (internal quotation marks omitted).

For all of these reasons, Fox has failed to establish that he was prejudiced by his attorney's conduct.

Because Fox has not met *Strickland*'s test, his claims that his attorney rendered ineffective assistance fail. The petition is DENIED. Judgment shall be entered for the government.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253(c)(1)); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005) (same); *see also* FED. R. APP. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §§ 2253(c)(2) & (3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 335. Although a COA does not require a showing that the appeal will succeed, *id.* at 337, courts should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there is no question that the issues raised in the petition are meritless for the reasons stated. Because any appeal by Fox does not deserve attention, the Court DENIES a certificate of appealability.

To appeal *in forma pauperis* in a § 2255 case, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997). Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. FED. R. APP. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See id.*

In this case, for the same reasons the Court denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.

IT SO ORDERED.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 25, 2017.